I see Mr. Barton and I see Mr. Smith. Can you both hear me? Loud and clear, Your Honor. Thank you. All right, then we can proceed. Mr. Barton. Very good. Thank you. May it please the Court. Good morning. My name is Dennis Barton. I represent the appellate defendant, Kross, Lieberman & Stone. I request five minutes for rebuttal, please. That's fine. Thank you. The plaintiff was hired by PRA Health Services. She received a sign-on bonus as part of her compensation package that she would only need to repay if she didn't work for PRA more than two years. She was terminated within that time period, though, and the contract deemed that she was liable to repay that bonus. Four days after her termination, the balance was placed with KLS for collection. Shortly after collection activities began, plaintiff filed this FECPA case. Mr. Barton, forgive me, this seems to be outside the scope of the case, but I've been curious about why the repayment fell within the terms of the agreement in any case. Doesn't the agreement say if you leave, PRAs employ voluntarily or are terminated for cause? She didn't quit, and she wasn't terminated for cause. It was a reduction in force. Was that ever raised as an issue? Did I miss it somewhere? No party raised that as an issue, Your Honor. Can you help me with it? Honestly, I did not explore that aspect of the case with my client because it claimed the money was owed. The defense never mentioned it, and it's just something we never addressed quite candidly. My speculation is that it believed when she left. I'm sorry, I don't want to speculate. I don't know. Yeah. Well, I've been speculating. Okay. Okay. Go ahead. Thank you. Mr. Barton, before you get any further into your merit argument, would you address the issue of standing? I will. The standing for plaintiff standing, you mean? Yes. That's a question that we need to raise on our own, even though the parties did not. And we have just issued a whole grouping of important decisions on FDCP. I did see that, and it was never raised in the lower court, but I understand it's always available to be argued. I will say that the defendant would find the plaintiff did not have standing, and the reason I don't believe standing existed is because, as this court has been ruling consistently with its recent cases, is that even if there was a technical violation here, there was no harm. She didn't pay the sign-on bonus, whether she owed it or not under the contract. She didn't pay it out of fearing for collection activity. She didn't fear it out of being coerced or anything like that, so she had no loss. There was no underlying lawsuit that was brought against her, forcing her to hire a defense attorney in order to defend her. I don't see in any way that she was harmed that would give grounds for standing. What are the allegations? Well, my understanding, Your Honor, is that the allegations, if a motion to dismiss was brought prior to discovery or prior to exploring the issues, then we look simply at the pleadings. But in this case, there was no evidence as to what harm that plaintiff would have suffered. I believe she probably— It wasn't developed at summary judgment, so we have to fall back on what was alleged. The question, what was alleged by way of artificial— Sure. I'm sure there's a throw-in line that the plaintiff was injured because, you know, stress or something. I'd have to quickly look at the pleading, and I apologize. I don't have that right in front of me. But I can readdress that, if you'd like, on my rebuttal. Okay. That's fine. Thank you. So the district court—I'll go to the errors that we believe the district court made, reversible errors. The first one was to find that the plaintiff's obligation to repay the sign-on bonus was a consumer debt under the FDCPA because the district court found that the bonus was actually a consumer loan rather than a commercial debt arising out of a commercial transaction, an employment transaction, which would otherwise be beyond the scope of the FDCPA. The second reversible error is when the district court, after finding the debt fell under the FDCPA, said that the defendant was a debt collector because the debt was in default immediately upon being placed—immediately upon becoming owed, which made the defendant a debt collector under the FDCPA. The FDCPA, in such a conclusion, is completely inconsistent with the language of the statute and the previous decisions of this court and other circuits. I'm going to move to the first point, though, that the debt is not a consumer debt. It's a commercial debt not covered by the FDCPA. The FDCPA is not a debt collector. It's a consumer debt. It's a debt collector. And so when you address, well, what's a transaction? Well, this court in Bass defined a transaction as one where the obligation to pay had to arise from both a consensual transaction, which we have here, but also where the parties negotiated or contracted to have a consumer-related good or service. And that's completely absent here. What we have is an employer giving an employment—giving compensation to an employee for work to be performed. That's part of the plaintiff's coming on board to PRA was a sign-off bonus. It was compensation. It wasn't consumer-related. The plaintiff was not buying something from the—buying something from PRA. PRA, in fact, was actually buying the services of the plaintiff. So that is where, from the beginning, we see that this is not a loan. A loan is where two parties—you know, there's a borrower and a lender, and the borrower gives money and the lender gets the money, and both parties expect that money to be repaid. A contingency bonus is different. In fact, it's very different in that there's two parties. One party gives money to the other, and neither party really expects that money to come back. In fact, neither party wants that money to come back because if the employee is doing what the employer wants, that's great, right? Everybody's a winner. And people sign-off bonus. Somebody gets hired on. Most people don't expect to leave. They want that relationship to work. So a sign-off bonus is where money is given as part of a compensation where neither party believes the money will be returned, which is the opposite of what a loan is. In fact, it's analogous to a sales draw, a salesperson who gets money up front and then pays and then earns that money through sales. That's not considered a loan by the employer. It's considered a way of compensating that salesperson while the salesperson is selling the product. And two cases that are really instructive on this are Thompson v. Diversified Adjustment Services and the Cerber versus McCarthy, Burgess, and Wolfe. Ironically, these are two very – these are excellent cases for the defense, but they were cited by the district court in support of the district court's opinion. When it comes to Thompson, Thompson was a case where the district court found that there was a loan given from the employer to the consumer, and the district court says that's just like this case. But the case was very different from this one. In fact, in that case, the court couldn't make a determination as to whether it was a loan because the underlying contract, employment contract, said that part of the compensation was a commission, a sales commission. And in addition to the sales commission, the employee would have an option to get a loan from the employer from time to time. But it was completely different. I mean, it was two very different things. And the district – and that court recognized that and said that if the money that's owed turns out to be linked to a commission that was unearned, which much like here is probably a sign-on bonus that's unearned, then it would not fall under the FDCPA. It would not be considered a debt under the FDCPA. However, if it was considered a loan, then it would be. But that court really helped show that there is a very stark distinction between those two. In the server case, similar type of facts shows it even better. There we have sales commissions where the money is what's called charged back or clawed back if, for some reason, the underlying policy is canceled by the insured. And there's a prorated – there was a prorated claw back there. And the court said in that case when the collector was trying to collect that clawed back portion that that wasn't a debt under the FDCPA because that was part of commission. That was given. And even though there was a potential of it needing to come back, just like a sign-on bonus where you get money and there's a potential that it might be paid back, the possibility that you might have to pay it back doesn't erase the fact that it's part of an employment compensation package and it's a commercial transaction under the FDCPA. The court seemed to want to call this a loan and then tried to find a way to – cases that kind of support it. But the district court started with a false premise. It stated that there was a consensual agreement between the parties, which was true, but the district court said that that agreement was for personal service in exchange for money that would be used for a personal reason, for medical expenses. And that's not what happened. A personal service – it just doesn't mean an individual acts. I mean a personal service isn't when you act on behalf of your company. She was hired as a clinical manager, and that's not a personal service. That's a service on behalf of your employer. I mean she wasn't mowing someone's lawn. She wasn't volunteering her time at a daycare or at a shelter. That would be personal service. This was an employment relationship. And the money that she was given, what she decided to do with that money, just because it was a personal – she decided to use it for medical or household purposes, doesn't take what starts as – doesn't change what starts as a commercial transaction and turn it into a personal transaction. In fact, Miller v. McCullough discussed this in this court's case. It states that you can't take – it was opposite, though. It said you can't take it personal and then change it into a business. But the same concept would hold. You look at the time of the transaction, Miller v. McCullough stated, and at the time of the transaction, if it was a commercial business transaction, the FDCPA doesn't apply. And that's what happened in this case. Turning now to the other point, the other error was where the court found that at the time of placement, the defendant was a debt collector. Now, the defendant argues that the debt was not yet in default, so it can't be a debt collector. The court looked at 1692A6. Let me rephrase. 1692A6 defines what a debt collector is. And A65 gives exceptions – pardon me, exemptions. And A653 states that one of the exemptions is that if the debt is not yet in default at the time of placement, then the debt is not – pardon me, then the collector is not a debt collector under the FDCPA, and it's not the type of debt that is covered under the statute. A debt needs to be in default. Well, unfortunately, default is not something that's defined by the statute. But courts have looked at it. The district court said that the debt becomes in default immediately when it's due. But that's contrary to the case law, which – pardon me, it's contrary to the language of the statute. If that were true and all debts were immediately owed – pardon me, were immediately in default, there would be no exception. They would just say debts are – when there's a debt, you're a debt collector. But because there's a default exception, it says that it's different. So we have to look at the record to see when this debt was in default. The district court said that the record didn't support a conclusion, but then the district court made a conclusion anyway. And the judge said she did it because as a matter of law, she was permitted to do so because it was a legal question. And while it is a legal question, if there's not enough information to make a conclusion, even if legal or factual, no conclusion should have been made. We believe, though, that there was enough because the documentation there stated that the money was going to be owed promptly after the termination. And promptly has – that's not defined in the contract, but there's case law that says promptly is soon rather than immediate. Promptly – there's cases from the Seventh Circuit and the Supreme Court – promptly can mean within 10 days, could mean within 30 days. You know, it is – there's a range. There's a little flexibility there. And the placement of the debt with the – with KLS was only four days, which makes it well within a time that the debt would not yet be in default. I see my time has expired, and I'll finish my rebuttal. Thank you. Actually, you used your rebuttal time, too. Oh, my goodness. I'm so – okay. I thought – I'm so sorry. Thank you. Thank you. Mr. Smith. Thank you, Your Honor. Counsel, may I please the court? My name is Larry – Mr. Smith, I'm not even letting you say your name. That's terrible. But you better get right into standing here. I was, Your Honor. Thank you. Again, Larry Smith for Audrey Wadsworth, the appellee. Your Honor, I will get right into standing because, yes, some decisions have come out recently regarding the issue of standing. Casillas and Lavallee are two of them that I think would apply here. And this is a Lavallee case. And this court found that in a case where somebody has gotten no notice – this is a no-notice case – they suffer a concrete harm. They suffer a concrete harm. And she got no notice at all of what her rights were, her right to dispute the debt. Now – Well, Mr. Smith, there was another factor in Lavallee that was decisive. It wasn't the – Yes. – here to provide the notices alone that was decisive. It was the fact that the plaintiff there had been sued and could have halted the collection action – Yes, Your Honor. – had she received notice. And we don't have that here, is that what you're saying? No, Your Honor. The one difference between this case and Lavallee is because she's not being sued yet. She's not being sued. But certainly, she's in peril here. You know, she just got let go of a job. She's now newly unemployed. She gets a letter saying that now she owes $6,000. It comes from this company Cross, Lieberman, and Stone. They look like lawyers. And she's panicked. And they don't tell her she has the right to dispute this. Now – We need a concrete hearing. Indeed. And it's not enough that she was panicked. Psychic injuries don't count here. We have several recent cases that – Yes, Your Honor. And, yes, in Lavallee, she was being sued at that time. And my client is not being sued yet. But in Lavallee, like my client, they're in peril. You see, she gets this notice. And as Judge Roeber pointed out – and this is an important thing, and I'm glad Judge Roeber pointed this out – there is a dispute here. There is a reason she might not owe the debt. And she should be given notice of those rights to dispute the debt. And she's given no notice whatsoever. She's just being told she owes this money right now. And she has to pay it right now. And she's in peril. But maybe I could focus this, because this is all conjectural right now, because this issue wasn't really developed at summary judgment. And I asked Mr. Barton if he could remember what was alleged. Since we don't have a summary judgment record developed on the standing question, we have to fall back on what was alleged. So what was alleged by way of Article 3? We allege that she was harmed by the conduct of the defendant in failing to give her any notice, and that it caused her injury. What is the injury? The injury is the utter lack of notice while she is in peril, facing a debt. That's just a statutory violation. We said in the Larkin case that the statutory violation alone. But this is not just – That's what the bill stands for. We need a concrete injury that's not just a statutory violation. This is not just a statutory violation with nothing to it. And this was in the record. Respectfully, Your Honor, this was in the record, that she had a contract that said that if she leaves voluntarily or is terminated for cause, she owes the money back. But that's not what happened here. So she has this dispute to deal with, and she has these people coming after her for money, telling her the money is owed now and giving her no notice that she has the right to dispute this in the face of a real dispute. And I'm glad that Judge Robner pointed that out because that's where she's harmed in not being able, not giving the notice to raise a dispute. And as the district court found in this, she's a person. She's not a commercial entity. She's the kind of person that should be protected by the statute, that should get the notices that she's supposed to get. And in not getting this notice, she's in peril. She's not being sued yet, but who's to say that's not coming down the road when Cross, Lieberman, and Stone sends a letter and doesn't tell you what your rights are? And so I believe she was harmed here, and she was in peril. We did allege it, and we did prove it. So now, if I may, turn to the arguments that were made in the case, and I do hope I answered Your Honor's question. If not, please tell me, and I'll see if I can try again. Well, I'm still not hearing any kind of concrete and particularized injury. I'm hearing an allegation of a statutory violation and an assertion that she was imperiled, which is based on conjecture. It's not based on any concrete injury. Your Honor, then to say that would be in the summary judgment record or in the complaint. Well, she did allege it in the complaint. She didn't allege an injury in the complaint, except in a conclusory way that she was harmed. She was harmed. Well, we allege that she was harmed as a result of the defendant's conduct. And look, in lavalier, she was getting sued. That's not an allegation of injury. Are we going to say that you're not harmed unless you're being sued when you're being done by a collector and unless they're suing you at the time? No, that's not the only kind of injury. This is an injury where she's... I'm asking you, what is the injury? The injury is lack of knowledge of the fact that she can dispute a debt that is disputable. Right, that's a statutory violation. She didn't get the notice. Right. That's a statutory violation. She has a debt that's disputable and that these people are coming after her and that she doesn't have any rights at all. That's just a statutory violation. To protect people that don't know their rights and that are unsophisticated and that she's not a commercial entity. She's just a person. She's a person that was given money to take home and use for herself to pay her bills. Right. Mr. Smith, you're describing a pure statutory violation. And what I'm asking for is what injury did that statutory violation cause? The injury caused the harm of not knowing her rights. Informational harm of not knowing her rights and not knowing that she has the right to dispute a disputable debt. And that is why... Right, and that runs right into the teeth of Casillas and Larson and the other cases that we've recently issued on this. Casillas was a case where it was incomplete notice. This is a no-notice case. And to say, Your Honor, that the only way she suffers harm when she doesn't get notice is if she's being sued at the time she doesn't get notice is to suggest that nobody could be harmed by not getting notice. Again, I'm not suggesting that. I'm giving you an opportunity to articulate some kind of injury. And I believe I've articulated the harm by pointing out that she was in peril of being newly unemployed and being informed that she owes a debt immediately back to her employer of money that she does not have and no notice that she has a right to dispute it despite the fact that the record shows, and I will point out, the record shows she had a dispute here. And I'm glad the judge pointed that out. She was let go for a work reduction and she had a dispute and she wasn't told that she had the right to dispute this debt. She was stuck with it. Now, turning to the issue of whether or not this was a debt, as this court pointed out in its Bass decision, and its Franklin decision, and its Newman decision, if a transaction creates an obligation to pay a debt, it's covered by the act. And this was a transaction. And using their own words, this was a contract. And as this court said over and over again, contract law governs it. We've created a debt covered by the act. And this was not a commission. This had nothing to do with sales or earning. This was not money that was paid up front to her that was not yet earned. This was two scheduled payments. She wasn't even in sales. I should point out, she wasn't even in sales. This was two scheduled payments. She gets one payment at the outset of her employment and another payment six months later. And that was just for signing on the dotted line and going to work there. So that is a transaction that caused this debt. What was the subject of the transaction? Money. They gave her money. Two payments. And she took that money and she used it to pay her medical bills and to buy household products. And that's what we put in the record. But the subject of the transaction was employment. I'm sorry, Your Honor? The subject of the transaction was employment. It was a signing bonus to induce her to come and work for the company. Sure, she was- And to stay a certain duration of time. So the subject of the transaction was employment. It wasn't consumer products, consumer services, consumer goods of any kind. It was employment. What this court said in the Berman v. G.C. service case is what we look at is we look at how she used the money that she has to pay back. Actually, that's not what the statute says. The statute says we look at the subject of the transaction. We look at the subject of the transaction and the derivative, pardon my tongue, derivative obligation to pay back. And what she got, what she got the money for, what did she use it for? That she has to pay back. No, that's not what the statute says. The statute doesn't say anything about looking to the derivative purpose. The statute says we focus on the subject of the transaction. The subject has to be for payback. And she goes to work and she signs a contract and the contract gives her money and she uses that money for personal purposes. She doesn't use it. This isn't a services agreement where she goes and buys business cards or ads or promote her business or promote herself or promote what she's doing. It's money that her employer gave her pursuant to a contract that she got to take home. That's the statute. I mean, that's exactly what a debt is under the statute. And if Congress didn't limit the type of transactions and didn't say employment compensation packages aren't included, certainly it could have, but it didn't. It actually kept it somewhat expansive in saying any obligation to pay money arising out of a transaction. And it doesn't matter that it's an employment transaction, what kind it is. If it creates an obligation to pay back a debt, it is a debt. I want to turn with a few minutes I have left to discuss the second issue that was raised. And this defendant argues that since the debt was not in default when they received it to collect, they're not a debt collector. And this court covered this in the Schlosser case, a Schlosser versus GC services where this court said that you're one or the other. There is no door number three. You are either the creditor or servicer of a non-default debt or obligation or you're a debt collector. And if you take the account over for the purposes of collection, you're a debt collector. And this was exactly what Cross did here. They took the account over. It was a one-time shot to collect money from her. And they sent out a demand for payment in full. This wasn't a servicing agreement. They weren't servicing anything. If you want to look to what servicing is, I mean, RESPA has a helpful definition, receiving scheduled periodic payments pursuant to a loan. That's not what this was. This was a demand for payment in full. And what they wanted was they want to kind of construct a loophole that allows them 60 days to determine when the debt is in default, basically pick and choose when they comply with the debt and determine when they comply with the FDCPA. And it's all of the FDCPA. In this case, somebody didn't get her, you know, valuable notice. It could have been a failure to... It could have been ignoring a cease and desist, calling employers, calling late at night. They don't want to comply with the law when they don't have to, and they want to pick and choose when they do. So they've created this little loophole. That's door number three. But this court said there is no such thing. You're either servicing or collect... You're either the creditor or servicing non-defaulted debt, or you are a debt collector. And in this case, they were a debt collector. And the court even pointed out, they're an avowed debt collector. So this debt is a lot more like the time that you go to the metro station and you don't pay the $1.50 and you walk off the lot and immediately you owe $45. Or you cut a check and it's dishonored and immediately you owe the fee. They could have deducted this money from a paycheck when she left. And they said this money was owed immediately. So this is the kind of debt that does in fact become in default the moment it's created, like the dishonored check, like the metro station. This is one of those. I'd like to just make one last comment if there's no other questions for me. Cross, Lieberman, and Stone were well aware of its responsibility to comply with the law. They actually put it in their contract that was in the record, that they will comply with the FDCPA when they deal with these debts. But they also knew another thing. And that is when they don't, they make more money. And when they collect matters that they do not have to comply with the FDCPA, they're more successful collectors, they make more money. And that is something that I think the district court tried to avoid. Them picking and choosing when it is they can assign a debt to make more money. Their arguments here do not follow well-established law in this particular circuit. They're disingenuous. And I ask that you affirm the district court's opinion in its entirety. And I thank you very much for your time today. Thank you very much. Mr. Barton, your time has expired, but you may have a minute if you have anything to say in rebuttal. And in particular, I'd ask you to circle back to the standing question. You wanted a moment to think about that. Yes, Your Honor. Thank you for the extra minute. I appreciate that. Regarding standing, I'm looking at the complaint now. And it looks like paragraph 23 is the allegation regarding damages, stating that the violation, the plaintiff has suffered, continues to suffer, humiliation, embarrassment, anguish, emotional distress. I don't know of any evidence on the record to support that. So the defendant takes the position that the plaintiff has no standing because she had no injury. She had no concrete injury. Very briefly, unless you want me to talk more about standing, of course, I want to hit on this idea that a transaction automatically creates a debt under the FDCPA. It doesn't. Berman said it exactly. There, the plaintiff did not receive a consumer-related good or service, such as education or medical care, so it didn't count as a debt. Even the case the plaintiff and the district court cited did not help them because those cases said it has to be consumer-related. And as the record shows, this is an employment matter and not a consumer matter. That's all for my time. If I can add one little thing here, Your Honor. This is my first time before the court. It's a pleasure. Thank you so much. And your staff has been fantastic. You have rules, got a lot of rules, and kind of sifting through those and learning those. I had questions, and I called, and your staff is outstanding. So I just want to say thank you very much to the court. And we are getting a thumbs-up on that point from Mr. Smith as well, and we all concur. We have terrific staff and are indebted to them for seeing us through this pandemic remote operations dilemma that we all find ourselves in. And so thank you for those words of commendation. Yes, Your Honor. Thank you. And with that, we'll take the case under advisement with thanks to both counsel. And that concludes our calendar for today. The court is in recess. Thanks.  Thank you, Larry. Thank you, Garrett.